Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6558 | **DATE** | June 23, 2003 |
| **CASE TITLE** | *General Motors Corp. v. M&G Mgmt., et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum and Order, the Court stays the proceedings pending, at least, a final adjudication of M&G and Josette Weber's declaratory judgment action pending in the Circuit Court of Cook County, Illinois, and denies, without prejudice, Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 17 [14-1].

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 25 2003 | 34 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL MOTORS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 6558 |
| | ) | |
| M&G MANAGEMENT, A.J. WEBER and | ) | |
| JOSETTE WEBER, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
JUN 2 5 2003

## MEMORANDUM AND ORDER

Plaintiff General Motors Corporation ("GM") brings this diversity declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, against defendants M&G Management ("M&G"), A.J. Weber and Josette Weber (collectively, "Defendants"). Presently before the court are: (i) Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 17, and (ii) the parties' submissions in response to this Court's February 28, 2003 order directing the parties to address whether a currently pending state court action is a parallel proceeding under *Wilton v. Seven Falls*, 515 U.S. 277 (1995). For the reasons set forth below, the Court stays the proceedings pending resolution of the state court action, and accordingly, Defendants' motion to dismiss is denied without prejudice.

I.  **Background**[1]

GM, the world's largest motor vehicle manufacturer, sells motor vehicles nationwide through various independent dealers. The business relationship between GM and its respective independent dealers is governed by a Dealer Agreement that GM enters into with each

---

[1] The allegations in this section are drawn from Plaintiff's First Amended Complaint. Because GM's factual allegations are presumed true at this stage, the Court's summary omits language such as "plaintiff alleges."

dealer. Emil Denemark, Inc. ("Denemark") is an Illinois independent dealer for GM's Cadillac division. A.J. Weber, an owner of new motor vehicle franchises, expressed an interest in purchasing the Denemark GM dealership. M&G is a sole proprietorship purportedly owned by Josette Weber, A.J. Weber's spouse, and is the Webers' mere alter-ego.

On or about June 24, 2002, Denemark entered into a series of agreements with A.J. Weber, Josette Weber and M&G that purported to transfer ownership of Denemark's GM dealership from Denemark to A.J. Weber in exchange for cash. The first of these agreements were a Lease and Sublease between Denemark and M&G. Under the Lease, Denemark agreed to lease the real estate underlying its GM dealership to M&G for twenty years for annual rental payments of $1,000. M&G then, pursuant to a Sublease, agreed to sublease the same premises back to Denemark for ten years at monthly payments of $20,000, or $240,000 per year.

Next, Denemark and A.J. Weber entered into a Real Estate Sales Contract, pursuant to which Denemark agreed to sell, and A.J. Weber agreed to buy, the real estate underlying Denemark's GM dealership for $750,000. Upon closing of the Real Estate Sales Contract, A.J. Weber would replace Denemark as the landlord under the Lease (and the tenant under the Sublease).

Finally, Denemark and A.J. Weber entered into an Asset Purchase Agreement, under which Denemark agreed to sell, and A.J. Weber agreed to buy, various Denemark assets including Denemark's fixed assets, new and used GM vehicles, parts and accessories, various accounts receivable and Denemark's goodwill. Under the terms of the Asset Purchase Agreement, Denemark assigned all of its rights and obligations under the Lease and Sublease to A.J. Weber.

The cumulative effect of these agreements would result in A.J. Weber owning the dealership and its underlying real estate under the Asset Purchase Agreement and Real Estate Sales Contract, receiving rent of $1,000 per year from M&G for the dealership real estate under the Lease, and paying rent of $240,000 per year to M&G for the same premises under the Sublease.

Under the Dealer Agreement that Denemark entered into with GM, GM retains a right of first refusal to purchase the dealership assets of Denemark upon a proposed change of ownership. The Dealer Agreement further provides that if Denemark enters into a bona fide buy/sell agreement, GM will be bound by that agreement's sale terms unless Denemark and GM agree otherwise. Upon receiving information on a buy/sell proposal, GM has sixty days to exercise its right of first refusal.

GM received information relating to the above transactions on August 22, 2002, and on August 27, 2002, it informed Denemark and A.J. Weber of its decision to exercise its right of first refusal. GM also informed Denemark and A.J. Weber that, pursuant to its right of first refusal, it would obtain all rights and obligations granted and imposed upon A.J. Weber *and* his alleged alter-ego, M&G. GM also took the position that the Lease and Sublease were "sham agreements" entered into to improperly thwart GM's exercise of its right of first refusal. Specifically, GM stated that the agreements were designed to force GM (or its assignee), upon electing to exercise its contractual right of first refusal, to become the subtenant of its own property and to pay $239,000 in annual rental payments to M&G, the Webers' alter-ego, even though GM would own the dealership property outright and M&G admittedly holds no interest in the dealership business.

On August 28, 2002, counsel for A.J. Weber, claiming to act on behalf of M&G, advised

3

GM that "the purchase of real estate will be subject to the rights of M&G Management under the Lease." Soon after, A.J. Weber informed Denemark, at the request of the attorney representing M&G, that M&G had recorded the Lease on the title to the dealership premises, and that the Lease was effectively "an encumbrance against the properties."

On September 23, 2002, GM exercised its right of first refusal, purchased the Denemark dealership and assigned the dealership to a third party dealer that is owned by the Motors Holding division of GM. Denemark and GM consummated asset purchase and real estate sales contracts on terms consistent with the Asset Purchase Agreement and Real Estate Sales Contract agreements between Denemark and A.J. Weber. However, GM asserts that it did not assume any obligations under the Lease and Sublease.

On September 13, 2002, GM filed a declaratory judgment action in this Court seeking a declaration: (i) that GM has assumed the contractual rights of both A.J. Weber and M&G, or (ii) that the Lease and Sublease are invalid sham agreements designed only to thwart GM's assertion of its contractual right of first refusal. One week later, on September 20, 2002, Josette Weber and M&G filed suit against Denemark in the Circuit Court of Cook County, Illinois seeking a declaration that the Lease and Sublease *are* enforceable. On January 27, 2003, GM was added as a defendant to the Cook County action.

## II. Discussion

### A. *Wilton* Abstention

On February 28, 2003, the parties were ordered to brief whether the Cook County action is a parallel proceeding under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). *Wilton* posed the question of whether the discretionary standard of *Brillhart v. Excess Ins. Co. of America*, 316

4

U.S. 491 (1942) survived the more restrictive "exceptional circumstances" test set forth in *Colorado River Water Conservation Dist. v. United States*, 400 U.S. 800 (1976) in guiding a district court's decision whether to abstain from entertaining a declaratory judgment action in deference to a pending, parallel state court proceeding.

After *Wilton*, it is clear that the general rule promulgated in *Colorado River* – that a state court action will bar proceedings involving the same matter in federal court only under "exceptional circumstances" – is inapplicable in the context of suits brought under the Declaratory Judgment Act. *See Sta-Rite Industries v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996).

The *Wilton* Court observed that the Declaratory Judgment Act's "textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Wilton*, 515 U.S. at 286-87. The Court thus clarified that the "unique and substantial discretion in deciding whether to declare the rights of litigants" conferred on federal courts by the Declaratory Judgment Act since its inception is not restricted by the subsequent "exceptional circumstances" test of *Colorado River*. *Id.* at 286.

"In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. The Court thereby expressly reaffirmed the holding of *Brillhart*, in which the Court held that district courts are "under no compulsion" to grant declaratory relief but have discretion whether and when to do so. *Brillhart*, 316 U.S. at 494-95.

5

Here, several considerations cut in favor of abstaining. First, GM's action, which seeks a declaration that the Lease and Sublease are unenforceable sham agreements, is mirrored by a parallel state court proceeding filed by M&G and Josette Weber which seeks a declaration that the Lease and Sublease are valid contracts and enforceable against GM. The nub of both actions is the same – whether the Lease and Sublease are enforceable instruments. Although GM seeks an alternative declaration that, in exercising its right of first refusal, it assumed the contractual rights and obligations of both A.J. Weber and his alleged alter-ego, M&G, this argument also is encompassed by the state action, because any holding that the Lease and Sublease *are* enforceable would necessarily be predicated on a finding that GM only assumed the contractual rights and obligations of A.J. Weber, and not M&G. Moreover, both of GM's arguments presented to this Court are available to GM as potential defenses or counterclaims in the state action.

In arguing that the state court action is not sufficiently "parallel," GM points out that A.J. Weber is not a party to the Cook County action. As a prefatory matter, "parallelism" does not require that the parties in the underlying state action match with exactitude those in the federal declaratory judgment action. *See, e.g., Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 754-55 (9th Cir. 1996), *overruled in part on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc) ("It is enough that the state proceedings arise from the same factual circumstances."). Moreover, A.J. Weber is not an indispensable party to GM's action. Once GM exercised its right of first refusal, it expunged any potential interest A.J. Weber had in the dealership. Accordingly, whether the Lease and Sublease are enforced has *no* future bearing on any rights or obligations of A.J. Weber, except to the extent that, as GM

argues, M&G is A.J. Weber's mere alter-ego. And, to be sure, M&G has no less interest in vigorously pursuing the enforcement of the Lease and Sublease than would A.J. Weber. Given that the state proceedings involve the identical core issue as that presented by GM's declaratory action, and likely carrying preclusive *res judicata* effect on the present proceedings if decided on the merits, the state action is sufficiently "parallel."

Second, and significantly, GM's action presents purely state law issues and implicates no federal interests. Third, allowing GM's action to go forward would result in piecemeal litigation, or worse, a decision by this Court running headlong into that of the state court. Finally, considerations of judicial economy and comity point GM to the state forum to resolve the only real question, a state law question, posed by GM's action – whether the Lease and Sublease are enforceable against GM. Although some facial merit is found in GM's argument that the discovery taken to date augurs in favor of proceeding with this suit, the Court, mindful that the completed discovery consists only of Fed. R.Civ.P. 26 disclosures, interrogatories and document requests, does not find the potential duplication of these efforts so expensive or burdensome to warrant going forward here.

GM argues that because it has moved to dismiss the state court proceeding, this Court should not abstain. This argument fails on two levels. First, without making any comment, express or implied, on the viability of GM's motion to dismiss, this Court will not prognosticate on the state court's potential future rulings. Second, even if the state court action were dismissed, such dismissal *may* not be dispositive. The *Wilton* Court was careful to leave that stone unturned: "We do not attempt . . . to delineate the outer boundaries of that discretion in other cases, for example, . . . cases in which there are no parallel state proceedings." 515 U.S. at

290. Since *Wilton*, at least two Circuits have held that there is no requirement that a state action be pending before a federal court may decline to exercise jurisdiction over a declaratory judgment action. *See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) ("To hold otherwise would in effect create a per se rule *requiring* a district court to entertain a declaratory judgment action when no state court proceeding is pending."); *Golden Eagle*, 103 F.3d at 754 ("[T]he absence of a parallel state proceeding is not necessarily dispositive; the potential for such a proceeding may suffice."). In any event, as long as the state court action is pending, the Court need not decide whether the dismissal of the state case would alter the current balance weighing against going forward with GM's action.

Thus, on the present record, considerations of judicial economy and comity, the absence of any legitimate federal interest counterpoised against the clear interest of Illinois courts in deciding cases involving Illinois business dealings and arising exclusively under state law, the avoidance of piecemeal litigation and entanglement between the state and federal systems, the availability of a state forum to fully and fairly adjudicate GM's action, and, of course, the presence of a parallel state proceeding, all militate in favor of abstention. Accordingly, the Court stays this declaratory judgment action *at least* until a final adjudication is rendered in the state court matter.[2] The parties are ordered to notify the Court upon a final adjudication of the Cook County case.

**B.   Motion to Dismiss**

Because the Court is presently abstaining from deciding GM's declaratory judgment

---

[2]"[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2.

8

action, Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to join a necessary party is denied without prejudice.

## IV. Conclusion

For the foregoing reasons, in the exercise of its discretion under the Declaratory Judgment Act, the Court stays the proceedings pending, at least, a final adjudication of M&G and Josette Weber's declaratory judgment action pending in the Circuit Court of Cook County, Illinois, and denies, without prejudice, Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to join a necessary party [14-1].

DATE: June 23, 2003

Blanche M. Manning
United States District Court Judge